IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>CHARLES A. WEBSTER, JR.,<br><br>        Defendant. | ) <br> ) <br> ) <br> ) <br> ) Crim. No. 07-115-SLR <br> ) <br> ) <br> ) <br> ) |

Edward J. McAndrew, Shawn Weede, Assistant United States Attorneys, United States Attorney's Office, Wilmington, Delaware, Counsel for Plaintiff.

Charles A. Webster, Otisville, New York, pro se Defendant.

**MEMORANDUM OPINION**

Dated: August 30, 2012
Wilmington, Delaware

[signature] ROBINSON, District Judge

## I. INTRODUCTION

Following a jury trial on December 8 and December 9, 2008, defendant Charles A. Webster, Jr. ("defendant") was found guilty on one count and not guilty on one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (D.I. 56) Defendant then filed a motion for judgment of acquittal and new trial pursuant to Fed. R. Crim. P. 29 and 33, which was denied. (D.I. 73; D.I. 74) Defendant appealed that decision to the Third Circuit, which affirmed the denial of his motion. *United States v. Webster*, 400 Fed. Appx. 666 (3d Cir. 2010). Defendant now moves for a new trial pursuant to Fed. R. Crim. P. 33(b)(1) claiming newly discovered evidence. (D.I. 103) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons set forth below, the court denies defendant's motion.

## II. BACKGROUND

In August of 2007, defendant was on probation.[1] (D.I. 106 at 2) At this time, defendant shared an apartment with his father, Charles A. Webster, Sr. ("CWS"). (*Id.* at 1) At some point prior to August 20, 2007, defendant's apartment had been burglarized. (*Id.* at 3) Defendant stated that the burglars took a "laptop, []x-box, games, clothes, watches, [and] jewelry." (*Id.* at 4) One of the burglars also accidentally left a cell phone behind. (*Id.*) Defendant used the cell phone to determine the identity

---

[1]Defendant was on "level three probation" which means that he was subject to weekly reporting requirements and a curfew. (D.I. 40 at 7) As a condition of his probation, defendant was also "subject to arrest and to search of [his] living quarters, person, or vehicle without a warrant at any time by a Probation and Parole Officer." (*Id.* at 18)

of the burglars. (*Id.*) A few days later, on August 20, 2007, defendant was shot.[2] (*Id.*) On August 22, 2007, defendant's cousin was shot in an attack that was aimed at defendant. (*Id.*) Defendant believes that the robbery and both shootings were all conducted by the same "two dudes" that were "really trying to kill [him]." (*Id.*)

As a result of these incidents, Lingafeld sought and received approval to conduct an administrative search of defendant's apartment. (D.I. 40 at 24) At 8:00 p.m. on August 23, 2007, Lingafeld, along with other members of the New Castle County Safe Streets Task Force[3] ("Task Force") arrived at defendant's home to conduct the search. (D.I. 106 at 2) At the time of the search, defendant was the only person in the apartment. (*Id.*) The Task Force searched the home and found defendant's belongings, suggesting that he did in fact live in the apartment.[4] (*Id.*) A search of CWS's bedroom revealed a machete hidden between the mattress and box spring of his bed. (*Id.*)

After the search of the bedrooms was complete, Lingafeld searched a closet in the hallway. (*Id.*) Inside the closet, Lingafeld found a Ruger handgun hidden inside a rubber boot. (*Id.*) The gun "was loaded, had been fired, was stolen, and was placed in

---

[2]Senior Probation Officer Jeanette Lingafeld ("Lingafeld") testified that the shooting occurred at 10:18 p.m., which was past defendant's curfew. (D.I. 40 at 19)

[3]According to Lingafeld, the Task Force is "a partnership between probation and parole officers and police agencies that is focused on monitoring the behaviors of violent criminal offenders to ensure that they are compliant with the conditions of their release and not involved in ongoing or any other criminal activity." (D.I. 40 at 65-66)

[4]The Task Force also discovered $1,400 in cash in a shoe in defendant's bedroom. (D.I. 106 at 2)

3

the rubber boot in such a way as to permit easy access (with the butt up and the barrel down in the boot). (*Id.* at 2-3)

While the Task Force was conducting the search, CWS, along with defendant's sister and niece, entered the apartment. (*Id.* at 3) The Task Force kept defendant's relatives in the living room of the apartment, seated on a couch and love seat, while the search continued. (*Id.*) Task Force members asked the relatives to stand so that the furniture could be searched. (*Id.*) Lingafeld picked up a couch cushion and found a loaded Taurus gun that had been hidden between the cushion and the arm of the couch. (*Id.*) The Task Force proceeded to complete the search and defendant was arrested. (*Id.*)

Following his arrest, defendant was interviewed and he "made a number of admissions relating to his knowledge of and opportunity for possessing the Ruger handgun found in the closet of the residence." (*Id.*) During the interview, defendant admitted that he knew that a gun that matched the description of the Ruger was in the apartment. (*Id.*) Defendant stated that the Ruger belonged to CWS. (*Id.*) Regarding the gun itself, defendant admitted that it "had 'been there;' that it was an 'old revolver type, big old ugly thing;' and that it was 'brown, beige, or black.'" (*Id.*)

On August 28, 2007, CWS testified before a grand jury concerning the August 23 search and defendant's subsequent arrest. (*Id.* at 4) In his testimony before the grand jury, CWS stated that he did not own the guns found in his apartment and that he did not even know that there were any guns in the apartment. (*Id.* at 4-5) CWS testified that the only weapon that he knew was in the apartment was the machete that he hid

4

between his mattress and box spring. (*Id.* at 5) Later that day, the grand jury returned an indictment that charged defendant with possession of a firearm by a prohibited person. (*Id.*)

On the first morning of defendant's trial, there was an issue as to whether CWS would be called as a witness. (*Id.*) The government was considering calling CWS to again testify, as he had before the grand jury (i.e., that he did not own any guns or have any knowledge of guns in his apartment). (*Id.*) Defendant, however, wished to call CWS to support the defendant's theory that the guns belonged to, and were solely possessed by, CWS. (*Id.*) CWS's attorney informed both parties that he would invoke his Fifth Amendment privilege if either party called him as a witness. (*Id.*)

Despite the lack of CWS's testimony, defendant still built his defense on the theory that the guns belonged to defendant's relatives, including CWS. (*Id.*) Defense counsel offered this theory several times throughout the course of the two-day trial.[5] (*Id.* at 6-8) Even with the theory that the guns did not belong to defendant presented to them repeatedly, the jury concluded that defendant constructively possessed the Ruger that was found in the closet.[6] (D.I. 56)

---

[5]Defense counsel raised the theory in his opening statement, in cross-examining Lingafeld, and in cross-examining Detective Alfree. (D.I. 106 at 7-8). "[D]efense counsel's closing argument centered on the theme that [d]efendant's father, and possibly his sister, possessed the firearms." (D.I. 106 at 8)

[6]The jury found that defendant was not in possession of the Taurus handgun hidden in the couch. (D.I. 56)

5

On December 16, 2008, defendant moved for judgment of acquittal notwithstanding the verdict or for a new trial.[7] (D.I. 62) On April 14, 2009, the motion was denied. (D.I. 74) On January 19, 2010, defendant was sentenced to 188 months in prison. (D.I. 96) On January 20, 2010, defendant appealed the court's judgment. (D.I. 97) In denying defendant's appeal, the Third Circuit stated that "a reasonable jury could conclude based on the evidence that Webster knowingly had the power and intent to exercise dominion and control over the firearm." *United States v. Webster*, 400 Fed. Appx. 666, 668 (3d Cir. 2010).

On December 6, 2012, defendant filed a motion for a new trial pursuant to Fed. R. Crim. P. 33(b)(1) on grounds of newly discovered evidence. (D.I. 103) The newly discovered evidence that defendant submits to support his motion is an undated document signed by CWS claiming that CWS owned the guns found during the August 23, 2007 search and that he was the only person with knowledge that the guns were in the apartment.[8] (D.I. 103, ex. A)

## III. STANDARD OF REVIEW

Fed. R. Crim. P. 33(b)(2) provides that a motion for a new trial may be brought up to three years after the verdict if the motion is grounded upon newly discovered

---

[7]The motion asserted, among other things, that the guns could have belonged to CWS. (D.I. 62 at ¶ 6)

[8]The entirety of the informal document states "I, [CWS], would like to state that they were my guns, and the only one who knew they were there at that present day and time was me on August 23, 2007 all by myself. See, I had brought them back into the apartment earlier that day for my own personal reasons and nobody knew of any of it. I should've come forward a long time ago but I was afraid. So, I'm saying sorry for this big inconvenience, but this horrible truth has to finally come out." (D.I. 103, ex. A)

evidence. In order to grant a new trial on the basis of newly discovered evidence, the court must find that the following five requirements have been met:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on [] must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976). The "heavy burden" of proving each of the foregoing elements is upon the movant. *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (quoting *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006)). If any one of the five elements is not satisfied, the Rule 33 motion must fail. *Id.* (citing *United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002)). Further, "[c]ourts should 'exercise great caution in setting aside a verdict reached after fully-conducted proceedings,' and particularly so where 'the action has been tried before a jury.'" *Id.* (quoting *United States v. Kamel*, 965 F.2d 484, 493 (7th Cir. 1992)).

## IV. DISCUSSION

Although defendant's failure to meet his heavy burden of proving any one of the five elements results in the denial of his motion, the court will address two of the elements that defendant has failed to prove. Defendant has failed to prove the evidence is newly discovered and that the evidence would probably produce an acquittal. Those failures, along with the "great caution" that the court is required to exercise, lead to the determination that a new trial is not appropriate.

## A. Evidence Is Not Newly Discovered

First, the signed statement of CWS is not newly discovered evidence because the information it contained was already known to defendant. "Evidence is not 'newly discovered' if it 'was [actually] known or could have been known by the diligence of the defendant or his counsel.'" *Cimera*, 459 F.3d at 461 (quoting *United States v. Bujese*, 371 F.2d 120, 125 (3r Cir. 1967) (alteration in original)). The information contained in CWS's statement, that he owned the Ruger and that he alone possessed the gun, was argued by defendant at trial. (D.I. 106 at 6-8) One of the main themes of defendant's case was that the Ruger belonged to CWS. (*Id.*) Further, defendant himself claimed, in a videotaped interview shown to the jury, that CWS owned a gun whose description matched the Ruger, and that CWS kept the gun in the apartment. (D.I. 66 at 108-09) Based on the fact that defendant already stated that CWS had a gun in the apartment, CWS's statement cannot be considered newly discovered evidence.

Secondly, the fact that CWS's statement is newly available does not make it newly discovered. The Third Circuit has explicitly stated that evidence that is newly available, due to a witness giving up his Fifth Amendment protection, is not the same as newly discovered evidence.[9] *Jasin*, 280 F.3d at 362. CWS cannot have any greater knowledge today about the ownership and possession of the Ruger on August 23, 2007 than he did at trial. The fact that he chose to invoke the protection of the Fifth Amendment, instead of testifying at trial, does not make the information newly

---

[9]"After careful consideration of this matter, we join the majority of courts of appeals in concluding that evidence known but unavailable at trial does not constitute 'newly discovered evidence' within the meaning of Rule 33." *Jasin*, 280 F.3d at 362.

8

discovered. If the information in CWS's statement is true, then CWS knew where the gun was and who possessed it on August 23, 2007; so did defendant. CWS's statement is not newly discovered evidence.

## B. Evidence Would Probably Not Produce an Acquittal

CWS's statement would probably not produce an acquittal if introduced at trial because the theory that it was CWS (and not defendant) who solely possessed the guns was raised repeatedly throughout the trial by defendant's counsel. The guilty verdict demonstrates that the jury rejected this theory.

Moreover, part of the court's job in determining whether evidence would probably produce an acquittal is to make a credibility determination in light of all the other evidence already considered by the jury. *Kelly*, 539 F.3d at 189. Here, several facts weigh against a finding of credibility. First, CWS's statement is a direct contradiction of his sworn testimony before a grand jury. That casts doubt not only on the statement at the heart of the instant motion, but also upon any other testimony that CWS might offer at a new trial. Second, CWS's statement does not establish the truth of what it purports to state. CWS claims that he was the only one who knew the guns were in the apartment on August 23, 2007. When the Task Force arrived, defendant was alone. CWS cannot possibly know whether defendant had gone into the closet and possibly discovered the Ruger after CWS had supposedly placed it there earlier that day. Finally, CWS's credibility is questionable due to the bias that exists as a consequence of being defendant's father. Since the court has determined that CWS is not credible, the court finds that a jury would probably not "reach a different result upon hearing the new evidence." *Id.*

9

## V. CONCLUSION

For the foregoing reasons, the court denies defendant's motion for a new trial.